**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Mark W. Kelly,  )
      Plaintiff,  )  No. CIV 24-001-TUC-CKJ
 )
vs.  )  **ORDER**
 )
Pima County Sheriff, *et al.*,  )
      Defendants.  )
_____ )

Pending before the Court is the Motion to Quash Subpoena ("Motion") filed by non-parties James Hinkle ("Hinkle") and Desert Earth Contracting ("DEC") (collectively, "Non-Parties") (Doc. 73). Plaintiff Mark W. Kelly ("Kelly") has filed a response.

*Sufficiency of Service*

Non-Parties assert the subpoena is deficient because only the face page of the subpoena was served upon them; the required documentation informing the served party of their rights and ability to contest the subpoena was not served upon Non-Parties. Kelly does not dispute this assertion, but requests he be permitted to issue an amended subpoena to addresses any procedural defects. Indeed, the first page of the subpoena served upon Non-Parties states, "The following provisions of Fed.R.Civ.P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so." Motion, Exhibit A (Doc. 75). However, Exhibit A does not include these notifications. *See e.g.*, Form AO88B, https://www.uscourts.gov/

sites/default/files/ao088b.pdf.

The Court finds the service of the subpoena is deficient and will grant the request to quash. However, the Court finds it appropriate to permit Kelly to serve an amended subpoena. In light of the likelihood the additional issues raised in the Motion will remain, as well as interests of judicial economy, the Court will address the additional issues herein.

*Subpoena to Non-Party*

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed.R.Civ.P. 26(b)(1). "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Pizzuto v. Tewalt*, 136 F.4th 855, 868 (9th Cir. 2025), *citation and footnote omitted*. Further, a party may serve a subpoena commanding a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control[.]" Fed.R.Civ.P. 45(a)(1)(A)(iii). Upon a timely motion, the Court may quash or modify the subpoena for any one of the reasons set forth in Fed.R.Civ.P. 45(d)(3). A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal. 2005); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("Once the person subpoenaed objects to the subpoena, however, the provisions of Rule 45(d) come into play."). Non-Parties bear the burden of persuasion. *Moon*, 232 F.R.D. at 637.

Non-Parties assert the requested information is not relevant. Although lack of relevance "is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon*, 232 F.R.D. at 637. However, the Ninth Circuit has recognized the restriction of discovery "may be broader when a nonparty is the target of discovery. As one district court has noted, '(t)here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or

disclosure of confidential documents.'" *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980), *citation omitted*. Moreover, "'[t]o obtain discovery from a nonparty, [the requesting] party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure.'" *Oyenik v. Corizon Health Inc.*, No. CV-13-01597-PHX-SPL-BSB, 2014 WL 12787872, at *1 (D. Ariz. Nov. 20, 2014), *citation omitted*.

The subpoena seeks all documents and communications in the possession of Non-Parties relating to internal or external communications regarding Kelly, as well as emails, letters, text messages, or other correspondence from September 1, 2019, through the present, with Richmond American Construction, Inc. ("Richmond"), Escalante Concrete, the Pima County Sheriff's Department ("PCSD"), the Pima County Building Services, the Pima County Clerk of the Board, and the Pima County Administrator's Office. The subpoena states, "This includes, but is not limited to, records referencing Mr. Kelly's video recordings, jobsite interactions, public complaints, law enforcement responses, or neighborhood disputes." Motion, Exhibit A (Doc. 75).

The Second Amended Complaint ("SAC") allegations include that, on previous and several occasions, Kelly parked his vehicle on a public easement next to the construction site of a new development by Richmond, with contractor DEC, and filmed the construction site from his vehicle. Richmond had "trespassed" Kelly from public sidewalks within the new development, and both Richmond and DEC restricted Kelly's lawful activities in public spaces by posting No Trespassing signs and making false accusations to law enforcement.[1]

On or about January 18, 2022, while Kelly was filming the construction site from within his vehicle, DEC construction worker Hinkle confronted Kelly and, claiming harassment and trespassing by Kelly, knowingly provided misinformation to the PCSD, which resulted in the arrival of deputies, including Gina M. Lumia ("Lumia") and Guy A. Marchal ("Marchal"). Kelly was forcibly removed from his vehicle, arrested without

---

[1]Kelly's response indicates Hinkle confronted Kelly about one week prior to the arrest, the owner of DEC previously lied to law enforcement on January 21, 2021, and another DEC employee made false police reports on April, 15, 2021 and July 26th, 2021.

1. probable cause, and subjected to excessive force. The deputies accused Kelly of disorderly conduct, instilled a fear in Kelly for his personal safety, categorized him as a threat, and opted for a jail transfer for a typical misdemeanor offense. The charges against Kelly were ultimately dismissed.

Kelly's SAC included claims against Non-Parties; however, those claims were dismissed against Non-Parties. Federal and constitutional claims remain pending against Defendants Lumia and Marchal.

The Court finds all documents and communications in the possession of Non-Parties relating to internal or external communications regarding Kelly are relevant to Kelly's claims against Lumia and Marchal. Kelly's listing of emails, letters, text messages, or other correspondence" seems duplicative as these items would be included in "all documents and communications," whether the documents or communications are internal or external. *See e.g.*, Fed.R.Civ.P. 26(b)(2)(C)(i). For example, if communications were exchanged between Non-Parties and the PCSD regarding Kelly, it would necessarily be included in "all documents and communications."

Further, Kelly has made an open-ended request as to all documents and communications regarding Kelly. It does not seem likely that any documents or communications regarding Kelly would have anything other than relevance to the claims presented in this case.

However, Non-Parties also seek to limit the scope of the subpoena based on its vagueness and being overly broad, outside the time frame of the alleged incident, requests privileged matter, and requests documents that are readily available from parties remaining in the case. Indeed, the right to even plainly relevant discovery is not limitless in that all discovery is subject to the limitations imposed by the applicable rule:

> (C) On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

- 4 -

    (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C); *see also Watts*, 482 F.3d at 509 (limitations set forth in Rule 26(b)(2)(C) apply to discovery served on non-parties by subpoena).

  Non-Parties argue the subpoena is vague and overbroad. The SAC refers to previous and several incidents prior to the January 18, 2022, arrest of Kelly, without specifying the dates of those incidents. Yet, Kelly does not provide a beginning date for his request for "all documents and communications." Further, he specifies September 1, 2019, as the beginning date when referencing communications with others and seeks disclosure through the present. Lastly, in his response, Kelly asserts Non-Parties' construction activities and his first complaint occurred on September 1, 2019, and that Non-Parties and related persons made false statement to deputies from January 2021 to January 2022. In other words, Kelly seeks approximately six years of documentation and communications. The Court finds this request is overbroad and finds it appropriate to limit the documents and communications subject to the subpoena. Based on Kelly's allegation regarding his first complaint, the Court will permit the discovery to begin on September 1, 2019. However, the Court sees no basis to permit the discovery through present. The Court, therefore, will limit the time period for which the disclosure pursuant to the subpoena is subject to shall be limited to six months following Kelly's arrest. The timespan for which Non-Parties will be required to provide documents and communications shall be from September 1, 2019, through July18, 2022.

  To the extent Kelly seeks all documents and communications between Non-Parties and other named entities, this request has no limitation. For example, it could encompass discussions between Non-Parties and Escalante Concrete regarding the pouring of concrete or communications between Non-Parties and the PCSD regarding incidents that have no relevance to Kelly's claims. The Court finds this non-limitation is vague and overbroad. As

- 5 -

1  previously discussed, the requests for documents and communications from Non-Parties
2  regarding Kelly will necessarily limit communications between Non-Parties and others to
3  materials relevant to this case.

4  Further, the subpoena seeks materials related to job site complaints, recordings, and
5  law enforcement responses, without limitation to such materials being related to Kelly. Kelly
6  argues the requested material is relevant because it seeks to uncover whether repeated false
7  reports by Non-Parties were part of a broader pattern of misconduct and retaliatory
8  coordination with public officials. "[I]t appears that [Kelly] intend[s] to sift through six years
9  of [materials] with the hope of finding some evidence that supports [his claim/theory]."
10 *Zucchella v. Olympusat, Inc.*, No. CV197335DSFPLAX, 2020 WL 13250450, at *4 (C.D.
11 Cal. Apr. 1, 2020). This appears to be "not merely an improper fishing expedition, [but] a
12 net cast blindly from an ocean troller in the mere hope of dredging some speculative treasure
13 from the bottom of the sea." *United States v. Johnson*, 2008 WL 62281, at *4 (N.D. Cal. Jan.
14 4, 2008). The Court finds such materials are not relevant. The documents and
15 communications for which Non-Parties will be required to provide pursuant to the subpoena
16 shall be limited to those documents and communications regarding Kelly.

17 Non-parties also asserts the request seeks documents that are readily available form
18 remaining parties, *i.e.*, the PCSD. Kelly asserts, however, that he has no alternative method
19 to obtain documents/communications between Non-Parties and PCSD and "cannot be
20 sourced from any other party or public record." Response (Doc. 76, p. 7). It is not clear to
21 the Court that Kelly cannot obtain discovery of documents/communications regarding Kelly
22 from the PCSD through discovery sought from Defendants or a public records request. *See*
23 *e.g. Hodai v. City of Tucson*, 365 P.3d 959, 968 (Ariz. App. 2016) (discussing burden of
24 public records request). The Court will limit the documents/communications required to be
25 produced under the subpoena to not include those between Non-Parties and the PCSD.
26 However, in the event discovery from Defendants and a public records request fails to
27 provide the materials to Kelly, Kelly may ask for reconsideration of this Order or submit a
28

1  new subpoena to Non-Parties.

2  Non-Parties also object to the subpoena on the basis it seeks privileged materials. As to any subpoenaed materials that are privileged, Non-Parties shall provide a privilege log. Fed.R.Civ.P. 26(b)(5); *see e.g. Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 514 (D. Ariz. 2023).

6  Lastly, Non-Parties point out that requiring Non-Parties to go through the requested documents and communications is harassing, unduly burdensome, oppressive, and not calculated to lead to any relevant discovery. The Court disagrees. Documents and communications (excepting those with the PCSD) regarding Kelly for a specified time period is a limited and focused inquiry reasonably calculated to lead to admissible evidence.

11  Accordingly, IT IS ORDERED:

12  1.  The Motion to Quash (Doc. 73) filed by Non-Parties Hinkle and DEC is GRANTED.

14  2.  The Subpoena served upon Non-Parties on July 7, 2025, is QUASHED.

15  3.  Kelly may serve a subpoena consistent with the Order herein upon Non-Parties.

16  DATED this 27th day of August, 2025.

_____
Cindy K. Jorgenson
United States District Judge